NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**WILLIAM GRECIA,**
*Plaintiff-Appellant*

**v.**

**MCDONALD'S CORPORATION,**
*Defendant-Appellee*

---

2017-1672

---

Appeal from the United States District Court for the Northern District of Illinois in No. 1:16-cv-02560, Judge Sharon Johnson Coleman.

---

Decided: March 6, 2018

---

MATTHEW MICHAEL WAWRZYN, Wawrzyn & Jarvis LLC, Glenview, IL, argued for plaintiff-appellant.

EDWARD H. RICE, Freeborn & Peters, LLP, Chicago, IL, argued for defendant-appellee. Also represented by DAVID JAMES DOYLE, MARINA SAITO.

---

Before DYK, REYNA, and TARANTO, *Circuit Judges.*

REYNA, *Circuit Judge*.

William Grecia appeals from the dismissal of his complaint for failure to state a claim for relief by the United States District Court for the Northern District of Illinois. Grecia alleged that McDonald's Corporation through its use of various credit card companies' authorization networks directly infringed two of his patents that claim systems for managing access to digital data. Because we hold that Grecia's complaint fails to plausibly allege that McDonald's obtained a benefit from each and every claim element, we *affirm*.

BACKGROUND

Appellant Grecia is the sole inventor and owner of United States Patent Nos. 8,533,860 ("'860 patent") and 8,402,555 ("'555 patent"). Both the '860 and '555 patents relate to the field of digital rights management, which aims to restrict access rights to digital media in order to curb unlawful copying. *See, e.g.,* '860 patent col. 1 ll. 19–26.

Relevant here, the '860 patent claims a system "for authorizing access to digital content using a worldwide cloud system infrastructure . . . comprising connected modules in operation." *Id.* col. 15 ll. 45–49. The preamble of claim 9 of the '860 patent states that these modules serve to "facilitate access rights between a plurality of data processing devices" such that the "system work[s] as a front-end agent for access rights authentication between the plurality of data processing devices." *Id.* col. 15 ll. 51–54. These modules include a (1) receipt module to receive a digital content access request that includes a verification token provided by a user, such as *inter alia* a password, email address, payment system, or credit card, (2) an authentication module that authenticates the verification token, (3) a connection module that establishes a connection to a communications console capable of a two way data exchange to complete the verification process,

(4) a request module to obtain an identification reference from the communications console, (5) a secondary receipt module that receives the identification reference, and (6) a branding module "writing at least one of the verification token or the identification reference into the metadata" for subsequent purchases. *Id.* at col. 15 l. 45–col. 16 l. 28. Claim 12 of the '555 patent similarly contains a preamble reciting a system to "monitor access to an encrypted digital media" by "working as a front-end agent for access rights authorization between a plurality of data processing devices." '555 patent col. 15 l. 65–col 16 l. 2. Like the '860 patent, independent system claim 12 in the '555 patent is comprised of six modules that are substantively similar to claim 9 of the '860 patent. *Compare* '555 patent col. 15 l. 65–col. 16 l. 35 *with* '860 patent col. 15 l. 45–col 16 l. 28.

On February 24, 2016, Grecia filed a complaint against McDonald's Corporation ("McDonald's") alleging direct infringement of system claims 9 and 10 of the '860 patent and system claims 12–14 and 24–26 of the '555 patent. Grecia alleged that McDonald's infringed these claims "through its use of the tokenization systems of" various credit card companies including Visa Inc., American Express Company, MasterCard Incorporated, and Discover Financial Services (collectively, "Visa"). J.A. 44, 53. Grecia claimed McDonald's "uses the system of claim 9 each time that McDonald's puts the Visa tokenization system into service." J.A. 44, 53 (alleging the same use for claim 12 of the '555 patent). In other words, Grecia alleged that McDonald's directly infringed its patents every time it accepted Visa cards as a payment tool for food purchases. *See id.*

In lieu of an answer, McDonald's moved to dismiss Grecia's complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). McDonald's argued that because it did not control any of the accused system's components, it did not "use" the claimed system

as required to plausibly plead direct infringement under 35 U.S.C. § 271(a). J.A. 2–3. For support, McDonald's relied on *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1309 (Fed. Cir. 2011), which held that Microsoft could directly infringe for its manufacture and use of a patented software registration system, where the claims required end-user participation on a local computer. Specifically, the system claims required the user to input information into the program, such as a software serial number, which resulted in the generation of a unique software ID number. *Id.* Microsoft had argued that it did not use the asserted system claims under § 271(a) because it was the end-users' computers, which Microsoft did not supply, that generated the unique ID necessary to register the software. *Id.* at 1308–09. We disagreed with Microsoft, concluding that because the system claims were drafted to focus solely on the actions of Microsoft, as the one entity performing the software registration, that Microsoft infringed despite the need for end-user participation through its "use [of] the remote registration system in the environment required by the claims." *Id.* McDonald's argued that like the claims in *Uniloc*, the asserted claims of the '860 and '555 patents are drafted to focus on the actions of one entity, Visa, and because Visa possessed and controlled all the claimed systems' six modules, only Visa could directly infringe the asserted claims under § 271(a) through use of its authorization network. McDonald's sought dismissal with prejudice, arguing that Grecia could not possibly amend his complaint to state a claim for relief given the claim language. Suppl. J.A. at 122.

Grecia countered that his complaint is facially plausible because to allege use under § 271, he needed only to plead that McDonald's has put the system as a whole into service and obtained a benefit. J.A. 3. For this proposition, Grecia relied on *Centillion Data Systems, LLC v. Qwest Communications International, Inc.*, 631 F.3d 1279,

1283 (Fed. Cir. 2011), a case in which we reviewed what constitutes "use" under § 271(a) of a system claim that included "elements in the possession of more than one actor." In *Centillion*, we held that "use" should be broadly interpreted to require only that an accused infringer "put the invention into service, *i.e.,* control[led] the system as a whole and obtain[ed] a benefit from it." *Id.* at 1284.

The district court agreed with McDonald's. *Grecia v. McDonald's Corp.*, No. 16-cv-02560, 2016 WL 4439953, at *1 (N.D. Ill. Aug. 23, 2016). It concluded that *Centillion* did not apply because the holding was limited to divided systems, while in the instant dispute, Visa possessed all of the allegedly infringing systems' components. *Id.* at *2. Instead, the district court found *Uniloc* to be controlling. *Id.* It found that McDonald's role in sending customers' credit card data to Visa was akin to that of "Microsoft customers' computers in *Uniloc*, merely part the environment in which the claimed inventions function." *Id.* Thus, the district court held that the "users of the claimed inventions are the credit companies themselves, not McDonald's." *Id.* The court entered final judgment in favor of McDonald's.

Grecia sought reconsideration, arguing that the district court erred in holding that McDonald's point of sale devices were not an element of the claimed system and in denying him leave to amend his complaint. The district court denied his motion. *Grecia v. McDonald's Corp.*, No. 16-cv-02560, 2017 WL 345556, at *1 (N.D. Ill. Jan. 24, 2017). First, it held that Grecia had pleaded that only the six modules comprise the claimed system, and that "[n]owhere in the complaint, which is laced with direct quotes from and citations to specific portions of the patents, did Grecia allege that McDonald's point-of-sale devices are part of the claimed systems." *Id.* Second, it found that it was not manifest error to deny Grecia the opportunity to amend his complaint because Grecia had

failed to "suggest any amendments that would save his complaint." *Id.* at *2.

Grecia appeals. We have jurisdiction under 28 U.S.C. § 1295.

## STANDARD OF REVIEW

We review the grant of a motion to dismiss for failure to state a claim according to the law of the regional circuit, here the Seventh Circuit. *Glenayre Elecs. Inc. v. Jackson*, 443 F.3d 851, 855 (Fed. Cir. 2006). The Seventh Circuit reviews motions to dismiss for failure to state a claim *de novo* and construes all well-pleaded facts and draws all inferences in the light most favorable to the plaintiff. *Vesely v. Armslist LLC*, 762 F.3d 661, 664 (7th Cir. 2014); *Olson v. Wexford Clearing Servs. Corp.*, 397 F.3d 488, 490 (7th Cir. 2005). The Seventh Circuit does "not accept as true any legal assertions or recital of claim elements of a cause of action supported by mere conclusory statements." *Vesely*, 762 F.3d at 664 (internal quotation marks and citation omitted).

## DISCUSSION

Section 271(a) of the Patent Act defines direct infringement as "whoever without authority makes, uses, offers to sell, or sells any patented invention, within the United States or imports into the United States any patented invention during the term of the patent therefor, infringes the patent." 35 U.S.C. § 271(a). The matter at hand reveals a gap in our jurisprudence on what constitutes "use" under § 271(a). Namely, the parties ask us to define what is considered "use" of a claimed system when the accused infringer must act to put the claimed system into service, but the accused infringer does not appear to possess any element of the claimed system. We have not found, and the parties have not directed us to, any controlling precedent that involves these facts and answers this question.

As before the district court, McDonald's takes the view that *Uniloc* stands for the proposition that where system claims are drafted to focus on the actions of one party, only that party could be liable for direct infringement for its use of the claimed invention. McDonald's overstates our holding in *Uniloc*. We concluded in *Uniloc* that a single party can still use, and thus directly infringe under § 271(a), a claimed system even when that system requires multiple parties to function. 632 F.3d at 1309 ("That other parties are necessary to complete the environment in which the claimed element functions does not necessarily divide the infringement between the necessary parties. For example, a claim that reads 'An algorithm incorporating means for receiving e-mails' may require two parties to function, but could nevertheless be infringed by a single party who uses an algorithm that receives emails."). Therefore, *Uniloc* only broadened the scope of potential direct infringers under § 271(a). The holding in *Uniloc* was also predicated on the system claims being drafted in a way that focuses on "one entity," such that only that entity used the claimed system. *Id.* Here, unlike *Uniloc*, that predicate is not facially apparent in the drafting of the asserted claims. For example, claim 9 of the '860 patent requires users of the system to provide a verification token corresponding to the digital content requested by the user. '860 patent col. 15 ll. 64–66 ("[T]he [digital content access] request comprising a verification token provided by a user corresponding to the digital content."). We disagree with the district court's holding that *Uniloc* controls the outcome of this case.

We also disagree with Grecia that *Centillion* controls in this case. In *Centillion*, we held that "to 'use' a system for purposes of infringement, a party must put the invention into service, *i.e.*, control the system as a whole and obtain benefit from it." 631 F.3d at 1284. *Centillion*, however, pertained to circumstances where the claimed system "include[d] elements in the possession of more

than one actor." *Id.* at 1283. Indeed, it was undisputed in *Centillion* that different parties possessed different claim elements, and no single party possessed each and every claim element. *Id.* at 1282. Here, unlike in *Centillion*, it does not appear that McDonald's is in the possession of any of the six modules claimed in either claim 9 of the '860 patent or claim 12 of the '555 patent. Grecia attempts to overcome this fact by arguing that the claims' preambles reciting a "plurality of data processing devices" are limiting and encompass McDonald's point-of-sale devices that send customers' data to the "first receipt module." Appellant's Suppl. Br. 10. Grecia thus contends that McDonald's possesses an element of the claimed system via its point-of-sale devices, and therefore *Centillion* applies.

We decline the parties' invitations to expand our doctrine on the control aspect of "use" of system claims under § 271(a). Even were we to accept Grecia's argument that the asserted claims' preambles are limiting and *Centillion* is controlling, Grecia's complaint nevertheless fails to plausibly allege that McDonald's benefits from each element of the claimed system necessary to allege "use" under § 271. In our recent case, *Intellectual Ventures I LLC v. Motorola Mobility LLC*, 870 F.3d 1320, 1329 (Fed. Cir. 2017), we rejected the notion that to find direct infringement, an accused infringer needs only to "benefit from the system as a whole" by deriving a benefit from "any claimed component of the claimed system."[1] Rather,

---

[1]    Because *Intellectual Ventures* issued after briefing in this case concluded, we requested the parties supplement their briefing on the question of whether Grecia's complaint passes muster in view of the rule articulated in *Intellectual Ventures*, that requires direct infringer benefit from each claimed element of the systems claim. Order

we clarified that the infringer must "benefit from each claimed component," i.e., from "each and every element of the claimed system." *Id.*

Here, Grecia has only identified a vague benefit to McDonald's in that it could use a token stored in metadata associated with a customer's primary account number with Visa for "subsequent hamburger purchases at" the McDonald's where the first purchase was made. Appellant's Suppl. Br. 11–12; *see* J.A. 46. In addition, Grecia asserts that he "will further allege that McDonald's benefits from use of his claimed systems by triggering indemnity obligations of the credit card companies if the credit card transactions are hacked." Appellant's Suppl. Br. 13.

We find Grecia's recitation of general benefits to be equivalent to stating that McDonald's benefits from the claimed system as a whole—the argument we rejected in *Intellectual Ventures*. The alleged benefit should be tangible, not speculative, and tethered to the claims. Here, Grecia fails to explain how McDonald's benefits from each and every element of the claimed system. For example, the sixth module, the "branding module writing at least one of the verification token or the identification reference into the metadata," does not appear to benefit McDonald's whatsoever. As alleged in Grecia's complaint, the branding module permits Visa to "write[] the token to the token vault, associating the token to the [primary account number] for later cross-referencing upon subsequent hamburger purchases at McDonalds." J.A. 46. But McDonald's does not receive or store the token. Rather it is a potential tool employed by Visa to facilitate future Visa transactions. Any benefit from the branding element rests solely with Visa. Grecia's assertion that McDonald's

---

at 2, *Grecia v. McDonald's Corp*, No. 2017-1672 (Fed. Cir. Dec. 11, 2017).

somehow benefits by Visa's cross-referencing the token upon subsequent hamburger requests is speculative, conclusory, and ultimately insufficient to state a plausible claim for relief for an infringing use of a claimed system under § 271(a). *Intellectual Ventures*, 870 F.3d at 1331 (rejecting theories of benefit that "amount to mere speculation or attorney argument); *Vesely*, 762 F.3d at 664 ("[W]e need not accept as true any legal assertions or recital of the elements of a cause of action 'supported by mere conclusory statements.'" (quoting *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013))).

Following oral argument, we requested the parties to brief the issue of whether the district court abused its discretion in refusing leave for Grecia to amend his complaint following entry of final judgment. Order at 1, *Grecia v. McDonald's Corp*, No. 2017-1672 (Fed. Cir. Dec. 11, 2017). While we decide this case on different grounds than that of the district court, we see no abuse of discretion in the district court's decision to deny Grecia leave to amend because he failed to describe or attach an amended complaint to his request for leave, nor did he "offer any meaningful indication of how [he] would plead differently." *Indep. Trust Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 943 (7th Cir. 2012); *Twohy v. First Nat'l Bank of Chi.*, 758 F.2d 1185, 1195 (7th Cir. 1985). Under Seventh Circuit law, the need for a plaintiff to provide this meaningful indication is particularly strong in the post-judgment context. *Hecker v. Deere & Co.*, 556 F.3d 575, 590–91 (7th Cir. 2009) ("Once judgment has been entered, there is a presumption that the case is finished, and the burden is on the party who wants to upset that judgment to show the court that there is good reason to set it aside."). Even now on appeal, Grecia fails to meaningfully indicate how McDonald's would benefit from each and every limitation of the claimed system. Grecia has not sufficiently explained how any amended complaint would survive under Rule 12(b)(6). We therefore decline to

remand this matter to the district court to permit Grecia to amend.

## CONCLUSION

Although we reject the district court's conclusion that *Uniloc* requires dismissal of this case, we find that Grecia failed to allege that McDonald's obtained a benefit from each and every claim element. We therefore hold that he has failed to state a claim upon which relief can be granted based on use of the claimed system under § 271(a). We *affirm*.

## AFFIRMED

### COSTS

No costs.